IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN E. ROBINSON | : | CIVIL ACTION |
| v. | : | |
| PATRICK V. FETTERMAN, et al. | : | NO. 04-3592 |

MEMORANDUM

Bartle, J.                                               July 19, 2005

      Plaintiff Allen E. Robinson has sued the defendants, Pennsylvania State Troopers Patrick V. Fetterman, John Rigney, and Gregg Riek, pursuant to 42 U.S.C. § 1983. He claims that the defendants violated his constitutional right under the First Amendment to free speech and his constitutional right under the Fourth Amendment to be secure against an unreasonable seizure. Specifically, he alleges he was falsely arrested, subjected to excessive force, and maliciously prosecuted.[1]

      The parties agreed to a non-jury trial, which was held on June 30, 2005 and July 1, 2005. The following are the court's findings of fact and conclusions of law.

---

1. Robinson also brought certain pendent state law claims. We granted the defendants' motion for summary judgment on these claims on the ground that, as employees of the Commonwealth of Pennsylvania, they were protected from suit by sovereign immunity. Robinson v. Fetterman, No. Civ.A. 04-3592 (E.D. Pa. Order dated May 5, 2005). We also granted summary judgment in the defendants' favor with respect to Robinson's federal claims to the extent that they were based upon his first arrest on June 20, 2000 because they were time-barred. Id.

I.

On June 20, 2000 Robinson became concerned about what he believed was an unsafe manner in which Pennsylvania state troopers were conducting truck inspections on Route 41 or its adjacent berm in West Fallowfield Township, Chester County. That same day, he contacted State Representative Arthur D. Hershey to inquire about videotaping the inspections. Representative Hershey suggested that before Robinson did so he obtain permission from the adjacent landowner whose property he intended to use for this purpose.

After receiving authorization from a landowner on the northbound side of Route 41, Robinson began videotaping the state troopers, including defendants Fetterman and Rigney, from a distance of approximately 30 feet. Shortly thereafter, Fetterman approached Robinson and asked him for identification. After an exchange of words, if not some pushing and shoving, defendant Rigney also appeared, at which point both he and Fetterman arrested Robinson for harassment under 18 Pa. Cons. Stat. Ann. § 2709.

A hearing was held before District Justice Robert E. Gill on August 28, 2000. Robinson was convicted of harassment and was told by the District Justice "not to go near these troopers for any reasons while they were performing their duties on Route 41." Robinson, who was not represented by an attorney, was assessed a fine and did not appeal the conviction.

Over two years later, on October 23, 2002, Robinson's wife, Shirley Robinson, was driving north on Route 41 toward the place where the state police performed truck inspections. As a result of the congestion caused by the inspections she almost had an accident. She notified her husband, who went to the location that same day to evaluate the situation. Again, Robinson believed the troopers were carrying out their duties in an unsafe manner and decided to make a record of it by filming them. He received the permission of Tim Kauffman to do so from his farm, which was adjacent to the inspection site on the southbound side of Route 41. From an open field, Robinson began to videotape. He was some 20 to 30 feet back from the highway at all relevant times and never interfered with the activities of the troopers.

Shortly after he started his videotaping, defendant Riek, who was one of the troopers inspecting trucks that day, approached Robinson, asked him for identification, and inquired whether he had permission from the property owner to be there. When Robinson responded in the affirmative, Riek returned to his duties without further ado. It so happened that Fetterman and Rigney were also inspecting trucks that day. Riek advised Fetterman about what Robinson was doing. Fetterman remembered Robinson from the June 20, 2000 incident and informed Riek of Robinson's prior arrest and conviction for harassment.

Riek, Fetterman, and Rigney then entered the Kauffman farm through the wire fence separating it from Route 41 and walked up to Robinson. They asked him to stop videotaping them

and to leave the area.  Fetterman reminded Robinson that District Justice Gill, over two years earlier, had prohibited him from being there.  When Robinson refused to leave or stop videotaping, they arrested him.  Rigney took Robinson's videocamera while Fetterman took Robinson's arms, placed them behind his back, and handcuffed him without a struggle.  While one of the officers at the scene raised the subject of erasing the videotape, they did not do so.  Fetterman placed Robinson into a patrol car on the southbound side of Route 41 where he was detained for at least a half-hour in handcuffs until the arrival of additional Pennsylvania state police officers who had been called to take him to the Avondale Barracks, approximately 10 miles away.  Robinson spent between two to three hours at the Avondale Barracks, during which time his videocamera was confiscated and he was booked and fingerprinted.  Upon his release in the late afternoon, Robinson began to walk home from the barracks and was eventually picked up on the roadside by his wife.

On November 12, 2002, Pennsylvania State Trooper Cory Monthei issued a citation to Robinson for violation of 18 Pa. Cons. Stat. Ann. § 2709(a)(2)&(3), the Pennsylvania harassment statute, based on his arrest by the defendants.  The citation stated:  "[t]he defendant [Robinson] did with the intent to harass, annoy, or alarm the victims, engage in a course of conduct which served no legitimate purpose.  To wit:  defendant was videotaping victim's (sic) movements without explanation and refused to desist upon order."  The copy of the citation in the

record identifies the victims as "Sgt. J. Rigney, Cpl. Gregg Riek, Tpr."[2] Robinson's videocamera, with the tape of a portion of the October 23, 2002 incident, was returned to him about the time he received the citation.

Robinson appeared at a hearing before District Justice Gill on January 7, 2003 and was again found guilty of harassment. This time, Robinson appealed the conviction to the Court of Common Pleas of Chester County, and on May 27, 2003, after a trial before Judge Thomas G. Gavin, the harassment charge was dismissed.

As a result of these 2003 court appearances, Robinson, a self-employed truck driver, missed three days of work during a time when his deliveries earned him approximately $400 a day. He incurred a $25 fee to appeal his conviction and paid $3,000 in attorney's fees in connection with his appeal to and trial in the Common Pleas Court. Robinson has also experienced significant stress as well as sleeplessness related to the October 23, 2002 incident and the subsequent court proceedings. However, he suffered no physical injuries and never sought medical treatment.

II.

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights,

---

2. It appears that the copy of the citation is cut off and that "Tpr." refers to Trooper Fetterman.

>           privileges, or immunities secured by the
>           Constitution and laws, shall be liable to the
>           party injured ....

Section 1983 "is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute."  DiBella v. Borough of Beachwood, 401 F.3d 599, 601 (3d Cir. 2005).  Thus, in order to establish liability under § 1983, Robinson must show that the defendants, while acting under color of state law, deprived him of rights or privileges secured by the Constitution or laws of the United States.  See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 579 (3d Cir. 2004).  The parties do not dispute that troopers Fetterman, Rigney, and Riek were acting under color of state law at all relevant times.

   Robinson first alleges a violation of his right to free speech under the First Amendment, specifically, the "right to videotape [state troopers] and thus speak out on issues of public concern."  First Am. Compl. ¶ 50.

   The First Amendment of the Constitution provides: "Congress shall make no law ... abridging the freedom of speech ...."  U.S. Const. amend. I.  This Amendment applies to the states and their political subdivisions under the Due Process Clause of the Fourteenth Amendment.  Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 301 (2000); Gitlow v. People of the State of New York, 268 U.S. 652, 666 (1925).  Robinson was simply recording the activities of Pennsylvania state troopers as they went about their duties on a public highway and its adjoining

-6-

berm.  His filming was done from private property with permission of the owner.  At all times he was 20 to 30 feet from the officers and was not interfering in any way with their truck inspections.

The activities of the police, like those of other public officials, are subject to public scrutiny.  Indeed, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  City of Houston, Tex. v. Hill, 482 U.S. 451, 461 (1987).  Although Robinson need not assert any particular reason for videotaping the troopers, he was doing so in order to make a visual record of what he believed was the unsafe manner in which they were performing their duties.  He had previously talked to Arthur Hershey, a Representative in the Pennsylvania General Assembly, about his concerns.  Robinson's right to free speech encompasses the right to receive information and ideas.  Stanley v. Georgia, 394 U.S. 557, 564 (1969).  He also has a First Amendment right to express his concern about the safety of the truck inspections to the appropriate government agency or officials, whether his expression takes the form of speech or conduct.  See Texas v. Johnson, 491 U.S. 397, 404 (1989); Minnesota State Board for Cmty. Colleges v. Knight, 465 U.S. 271, 308 (1984).  Videotaping is a legitimate means of gathering information for public dissemination and can often provide cogent evidence, as it did in this case.  In sum, there can be no doubt that the free speech clause of the Constitution protected Robinson as he videotaped

the defendants on October 23, 2002.  See Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000); see also Stanley, 394 U.S. at 564 (1969); Whiteland Woods, L.P. v. Township of West Whiteland, 193 F.3d 177, 180 (3d Cir. 1999).  Moreover, to the extent that the troopers were restraining Robinson from making any future videotapes and from publicizing or publishing what he had filmed, the defendants' conduct clearly amounted to an unlawful prior restraint upon his protected speech.  Vance v. Universal Amusement Co., Inc., 445 U.S. 308, 316 & n.13, 317 (1980); Near v. State of Minnesota ex. rel. Olson, 283 U.S. 697 (1931).

No reasonable trooper could have believed that Robinson's videotaping on October 23, 2002 constituted harassment under 18 Pa. Cons. Stat. Ann. § 2709.  That statute provides, in relevant part:  "[a] person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:  ... (2) follows the other person in or about a public place or places; [or] (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose."  Id. at § 2709(a)(2) & (3).  Significantly, the statute continues: "[t]his section shall not apply ... to any constitutionally protected activity."  Id. at § 2709(e).

At the trial in this case, Fetterman, Rigney, and Riek all admitted that Robinson's videotaping of police activity is not unlawful in itself.  They posited, however, that they arrested Robinson for doing so because of his prior harassment

-8-

conviction and because of the statement of the District Justice that Robinson was "not to go near these troopers for any reasons while they were performing their duties on Route 41."  The reasons given for barring Robinson from filming the truck inspections are totally lacking in merit.

First, it goes without saying that an individual does not lose his First Amendment right to free speech because he has had a previous encounter with law enforcement or is disliked by the police.  See McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995); City of Houston, Tex., 482 U.S. at 461-463, 465 (1987).  The police, under the cover of an invalid law, do not have "unfettered discretion to arrest individuals for words or conduct that annoy or offend them."  See City of Houston, Tex., supra at 465.  Nor can they ignore or unreasonably apply a valid law in order to arrest someone who annoys or offends them.  These are clearly established constitutional principles, and no reasonable police officer could have believed to the contrary. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Second, the District Justice had no legal justification to tell Robinson he could not be near the truck inspection site on Route 41 in the future whenever truck inspections were taking place.  The only penalty for the summary offense of harassment is a fine up to $300 and imprisonment for not more than 90 days.  18 Pa. Cons. Stat. Ann. §§ 1101(7) and 1105.  Taken literally, the District Justice's oral directive forbids Robinson from driving peacefully or even riding as a passenger in a vehicle on a

section of Route 41 in West Fallowfield Township whenever truck inspections are occurring. Robinson could not have lived, visited, or worked on any property in close proximity to the inspection site without the possibility of arrest. The ban imposed by the District Justice was apparently permanent. Here it was being enforced by the troopers more than two years after it was allegedly imposed.

      We recognize that the defendants maintain that they were relying on what the District Justice had said at the 2000 court proceeding. We find this totally unconvincing. No state trooper could have reasonably believed that the oral statement of the District Justice, unaccompanied by anything in writing and made over two years before the incident in question in this lawsuit, constituted a formal restraining order to be enforced by arresting Robinson under the facts as presented here. See Malley v. Briggs, 475 U.S. 335, 345-46 (1986).

      Robinson has established his claim that the defendants retaliated against him for exercising his First Amendment right to videotape police conduct. He has proven: "(1) that [he] engaged in protected activity; (2) that the [troopers] responded with retaliation; and (3) that the protected activity was the cause of the retaliation." Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003). Thus, we find the defendants liable under § 1983 for violating Robinson's First Amendment right to videotape police conduct.

III.

Robinson also alleges a § 1983 claim for violations of his Fourth Amendment right to be free from an unreasonable seizure. The Fourth Amendment to the Constitution provides, in relevant part: "The right of the people to be secure in their persons ... against unreasonable ... seizures, shall not be violated ...." U.S. Const. amend. IV. Like the First Amendment, the Fourth Amendment has been made applicable to the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655 (1961). Again, the defendants at all times were acting under color of state law.

Robinson first argues that the troopers arrested him without probable cause. See Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). "'Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" Estate of Smith, 318 F.3d at 514 (citation omitted).

The citation issued to Robinson describes the nature of his offense as: "[t]he defendant [Robinson] did with the intent to harass, annoy, or alarm the victims, engage in a course of conduct which served no legitimate purpose. To wit: defendant was videotaping victim's (sic) movements without explanation and refused to desist upon order." It cites to § 2709(a)(2)&(3) of

the Pennsylvania harassment statute, which reads: "[a] person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: ... (2) follows the other person in or about a public place or places; [or] (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa. Cons. Stat. Ann. § 2709(a)(2) and (3). Significantly, the citation omitted any reference to the part of the statute which states: "[t]his section shall not apply ... to any constitutionally protected activity." Id. at § 2709(e).

As we explained above, the activity of Robinson in videotaping the defendants on October 23, 2002, was constitutionally protected speech. Robinson was filming the troopers while on private property with authorization from the landowner. He was 20 to 30 feet from them and at no time did he interfere with the carrying out of the troopers' duties, which were being conducted on or near a public highway. Based upon these facts, no objectively reasonable police officer could have believed that Robinson was committing the offense of harassment under Pennsylvania law. See Estate of Smith, 318 F.3d at 514.

Robinson next alleges that he was subjected to excessive force when he was arrested. "[C]laims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S.

386, 396 (1989). The troopers do not dispute that Robinson was seized for purposes of the Fourth Amendment when he was arrested. As for the reasonableness of the amount of force used, our inquiry again turns upon a standard of objectiveness. Id. at 397. We must analyze the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight" to answer the question of "whether the totality of the circumstances justifie[s] a particular sort of ... seizure." Graham, 490 U.S. at 396 (citation omitted). Our Court of Appeals has enumerated additional factors to consider, including: "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

Here, the troopers handcuffed Robinson and placed him into a patrol car. He remained in handcuffs for about 30 minutes until additional Pennsylvania state police officers arrived to transport him to the Avondale Barracks. Robinson continued to be handcuffed during the drive to the Avondale Barracks where he was then booked and fingerprinted. In total, he remained in

handcuffs for about two and one-half to three and one-half hours before he was released and allowed to leave.

Robinson was arrested for a summary offense.  At the time of his arrest, the troopers did not have probable cause to believe that he had committed, or was about to commit, any crime whatsoever.  Robinson posed no threat to the safety of the officers or to the safety of others.  Moreover, he did not resist or attempt to evade arrest but succumbed peacefully to the will of the troopers.  There has been no evidence that Robinson was violent or dangerous, or that he was armed.  Robinson's arrest was completed within a matter of seconds, and there were no other individuals with which the three troopers had to contend.

We read the Court of Appeals' decision in Bodine v. Warwick to say that we should not conflate a false arrest violation with an excessive force violation.  72 F.3d 393, 400 & n.10 (3d Cir. 1995).  In other words, merely because a person has been falsely arrested does not mean that excessive force has been used.  "Officers who detain [an individual] unlawfully should be liable for the harm proximately caused by their tortious detention, but this will not necessarily include all harm resulting from the otherwise reasonable use of force to carry out the detention."  Id. at 400 n.10.  Under the circumstances of this case there was no excessive force.  Robinson was not physically injured and the amount of force to which he was subjected was at most de minimis.

Lastly, Robinson contends as part of his Fourth Amendment claim under § 1983 that he was maliciously prosecuted as a result of the October 23, 2002 incident. Our Court of Appeals explained in DiBella:

> To prevail in a Section 1983 malicious prosecution action, a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

407 F.3d at 601.

The crucial question under DiBella for present purposes is whether Robinson "suffered a deprivation of liberty consistent with the concept of a seizure as a consequence of a legal proceeding." 407 F.3d at 601. Under the facts of this case there are only two events that potentially meet this criteria: (1) Robinson's initial warrantless arrest without probable cause on October 23, 2002; and (2) his appearance at the January 7, 2003 hearing as a result of the summary citation issued to him. In this Circuit a warrantless arrest lacking probable cause does not qualify as a seizure as a consequence of a legal proceeding. See e.g. Martin v. City of Philadelphia, No. Civ.A. 98-5765, 2000 WL 11831, at *5 (E.D. Pa. Jan. 7, 2000); Torres v. McLaughlin, No. Civ.A. 96-5865, 1996 WL 680274, at *4 (E.D. Pa. Nov. 21, 1996); Cf. Burt v. Ferrese, 871 F.2d 14, 16-17 (3d Cir. 1989).

Likewise, the issuance of a summary citation and subsequently having to attend one's trial, without more, "is not a government 'seizure' in a 42 U.S.C. § 1983 malicious prosecution action for violation of the Fourth Amendment." DiBella, 407 F.3d at 603. Consequently, Robinson has not established his claim for malicious prosecution under § 1983.

We find that defendants are liable under § 1983 for violating Robinson's Fourth Amendment right to be protected from an unlawful seizure when they arrested him without probable cause on October 23, 2002.

IV.

Robinson is entitled to compensatory damages for any monetary loss, humiliation, and mental anguish caused by the defendants' deprivation of his constitutional rights. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986); Carey v. Piphus, 435 U.S. 247, 264-65 (1978). Compensatory damages may not be based upon the "abstract value" or "importance" of a constitutional right. Memphis, supra at 308. Rather, Robinson is required to prove, and has proven, that he has suffered damage as a result of the defendants' violations of his rights. Carey, 435 U.S. at 263-64. Taking into account the nature of the constitutional violations and of the harm, including mental anguish, inflicted on Robinson, we will award him non-economic compensatory damages in the amount of $35,000. See id. at 265. He cannot recover for his lost wages or counsel fees in connection with the state court proceedings because they are

related to his claim for malicious prosecution and not to his arrest.

Plaintiff also seeks punitive damages. Such damages may be awarded in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); Brennan v. Norton, 350 F.3d 399, 428 (3d Cir. 2003). Punitive damages are not designed to compensate the plaintiff; rather, they serve the dual purposes of punishment and deterrence. Smith, 461 U.S. 30. Factors to consider include: (1) the nature of a defendant's conduct, (2) the impact of a defendant's conduct on the plaintiff, and (3) the likelihood that a defendant will repeat the conduct if a punitive award is not made. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 19 (1991). "[P]unitive damages in general represent a limited remedy, to be reserved for special circumstances." Savarese v. Agriss, 883 F.2d 1194, 1205 (3d Cir. 1989) (citing Cochetti v. Desmond, 572 F.2d 102, 105-06 (3d Cir. 1978)).

The Constitutional principles involved in this action are well established. We are not dealing with a "close case" or with the split-second decisions police officers often have to make in the heat of a dangerous or potentially dangerous confrontation. There was no justification for the actions of defendants in violating Robinson's right to free speech and his right to be secure in his person against an unreasonable seizure.

Defendants' misconduct caused him real injury and involved reckless or callous indifference to his federally protected rights.  To defendants, Robinson was a gadfly.  In their view, he was annoying them.  The unfortunate events of October 23, 2002 arose out of this one undeniable fact.  It is fundamental that persons such as Robinson may not be deprived of their constitutional rights simply because they are unpopular or disliked or are resented by the police.  The defendants must be punished and deterred from similar misconduct in the future.  We will award Robinson punitive damages against each defendant in the amount of $2,000.

```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALLEN E. ROBINSON              :        CIVIL ACTION
                               :
         v.                    :
                               :
PATRICK V. FETTERMAN, et al.   :        NO. 04-3592
```

                             JUDGMENT

       AND NOW, this 19th day of July, 2005, based on the foregoing findings of fact and conclusions of law, it is hereby ORDERED that:

       (1) judgment is entered in favor of the plaintiff, Allen E. Robinson, and against the defendants, Patrick V. Fetterman, John Rigney, and Gregg Riek, jointly and severally, for compensatory damages in the amount of $35,000;

       (2) judgment is entered in favor of the plaintiff, Allen E. Robinson, and against the defendant, Patrick V. Fetterman, for punitive damages in the amount of $2,000;

       (3) judgment is entered in favor of the plaintiff, Allen E. Robinson, and against the defendant, John Rigney, for punitive damages in the amount of $2,000; and

       (4) judgment is entered in favor of the plaintiff, Allen E. Robinson, and against the defendant, Gregg Riek, for punitive damages in the amount of $2,000.

                                              BY THE COURT:


                                      /s/ Harvey Bartle III
                                                            J.